ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENVILLE | THIRTEENTH JUDICIAL CIRCUIT |
| Mandrill Montgomery, | |
|        Plaintiff, | **SUMMONS** |
| v. | |
| Prisma Health, | |
|        Defendants. | |

TO THE DEFENDANT ABOVE NAMED:

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is served upon you, and to serve a copy of your answer to this Complaint upon the subscriber at the address shown below within thirty (30) days (thirty five (35) days if served by United States Mail) after service hereof, exclusive of the date of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

**CROMER BABB PORTER & HICKS, LLC**

BY:   s/Shannon Polvi
        Shannon Polvi (#101837)
        1418 Laurel Street, Suite A
        Post Office Box 11675 (29211)
        Columbia, South Carolina 29201
        Phone  803-799-9530
        Fax    803-799-9533
        *Attorney for Plaintiff*

December 21, 2022
Columbia, South Carolina

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

IN THE COURT OF COMMON PLEAS
THIRTEENTH JUDICIAL CIRCUIT.

Mandrill Montgomery,

              Plaintiff,

v.

Prisma Health,

              Defendant.

**COMPLAINT**
**(Jury Trial Demanded)**

## EMPLOYMENT CASE

Plaintiff, complaining of Defendant herein, would respectfully allege as follows:

### PARTIES & JURISDICTION

1.     Plaintiff, Mandrill Montgomery, ("Montgomery") is a citizen and resident of Greenville County, South Carolina.

2.     The Defendant, Prisma Health, ("Prisma") is an entity that provides medical services within South Carolina, does business in Greenville County, and has offices, agents, and employees in the State of South Carolina.

3.     The Parties have sufficient connections to Greenville County, South Carolina, where Prisma employed Montgomery, and the majority of the events at issue occurred therein, and jurisdiction is proper.

4.     Montgomery's claim for defamation arises under South Carolina common law. Montgomery's other claims arise under the False Claims Act, as amended, 31 U.S.C. § 3729, *et seq.* ("False Claims Act"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e *et seq.* ("Title VII"), and the common law of South Carolina.

1

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

5.     Montgomery exhausted his administrative remedies for such claims by filing a Charge of Discrimination and Montgomery is in receipt of a Notice of Right to Sue from the United States Equal Employment Opportunity Commission. This action is timely.

## FACTUAL ALLEGATIONS

6.     Montgomery is a certified registered nurse anesthetist (CRNA).

7.     Montgomery was employed by Prisma from June 2008 until Defendant wrongfully terminated Montgomery on September 28, 2021.

8.     Montgomery is a black male.

**History of Race Discrimination in the Workplace:**

9.     Throughout Montgomery's employment with Prisma, Montgomery experienced race discrimination within the anesthesiology department. For example, there was a noose handing in the breakroom. Montgomery saw it during his break and reported it to management. Montgomery did not see who hung the noose and it appeared to Montgomery that Prisma did not investigate. This was a racially offensive and physically threatening symbol being displayed prominently in the employee's breakroom. On a separate occasion, Mathew Dickerson (black student employee) told Montgomery that he was working with Brad Hoover (white male supervisor)("Hoover") and witnessed Hoover fashioning a noose that he hung on the anesthesia cart.

10.     Other examples of race discrimination in Montgomery's workplace include the continual exclusion of minorities from the anesthesia department. During Montgomery's employment, for most years, it was just Montgomery and a handful of black anesthesia providers within the largest anesthesia department in the state. There have been 3 black males, Montgomery included, during the thirteen years Montgomery was employed there. Upon information and belief,

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

each of the black men complained of race discrimination during their employment within the anesthesia department.

11.    For a brief time, there was a black female anesthesiologist, Dr. Taylor, working there, after transferring from another hospital (not an outside hire). Montgomery observed that Dr. Taylor experienced a hostile work environment based on her race. Montgomery is aware of Prisma's administration soliciting complaints against Dr. Taylor from staff, including Montgomery.

12.    Montgomery is aware of an Indian female anesthesiologist who sought at the hospital. She was told that there was no position available. That was false, there was a position available, and it was race-based preferentially given to David Farr (white male).

13.    These are examples of the racially discriminatory nature of Montgomery's work environment. In this racially hostile work environment, Montgomery tried to keep his head down, do the best job Montgomery could for the patients, and stay out of the proverbial limelight.

**Events on and after August 28, 2021:**

14.    On Saturday, August 28, 2021, Montgomery was providing anesthesia medical services at Prisma. Montgomery was assigned to operating room 26 for a thoracic case. The medical records reflect that it was a complicated VATS on a patient with chronic pain issues and the patient required an unusual amount of paralytic during the previous anesthetics. The case was complicated by multiple pulmonary loculations, pneumatoceles, diffuse fibrous debris, as well as bilateral pneumothoraces (collapsed lungs), and trauma to both lungs. Montgomery was concerned about post-operative pain and residual paralytic, atelectasis, and subsequent pneumonias. It was a very busy case and immediate medical charting was difficult at times due to the medical needs.

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

15.     Working on Saturdays can be difficult because staffing is limited such that often an anesthesia tech nor a pharmacy technician was available to Mongomery to provide additional medications. Under these circumstances, during Montgomery's break, he removed some of the medication in order to be ready for the potential needs of the patient. Montgomery was not sure if anyone would be available to bring it later if it became an urgent or emergent necessity. At the end of the case, the patient had 3/4 twitches and was clinically reversible. Montgomery reversed the anesthesia. Montgomery contacted Dr. Matthew Vanna (white male anesthesiologist) for emergence. Dr. Vanna was not present, as the operating room nurse documentation should reflect, even though Dr. Vanna wrongfully attested to attendance in the medical record. In Dr. Vanna's absence, Montgomery extubated to a face mask; the oxygen saturation was adequate, yet because of the patient's status and out of a concern for a post operative pulmonary event, atelectasis, or pneumonia, Montgomery administered sugammadex, the only medication that definitively reverses all paralytics. The patient's oxygen saturation increased by PACU arrival.

16.     Montgomery went to the omnicell to drop off the drug box and he replaced the sugammadex from the code box in the normal fashion, as staff do for other emergent drugs. At that time, Montgomery spoke to Dr. Vanna directly and told him the chain of events, Montgomery's subsequent response and a description of the medications given to the patient.

17.     Montgomery did not do anything wrong or abnormal beyond what was necessary for the case. Montgomery was a fulltime anesthetist at Prisma for 11 years before changing to PRN status. At this time in 2021, Montgomery usually worked in Prisma's GI lab on the weekends. Montgomery had not been involved in a thoracic case at Prisma for about two years. Therefore, sugammadex is a drug Montgomery rarely had a need for. Montgomery has a long history of safe patient care and healthy working relationship with the anesthesiologist that supervise

4

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

Montgomery. If there is an airway concern for a patient, Montgomery typically had the bronch cart parked in the room; that includes the additional vasoactive and respiratory drugs for safe anesthesia. The administration of reversal agents is within my scope of practice outlined by Prisma. The actions Montgomery took were necessary under the circumstances to give the best care for the patient and avoid unnecessary complications.

18.     On August 29, 2021, Montgomery worked as normal at Prisma. Montgomery was scheduled to work 72 hours that week.

19.     On September 2, 2021, Montgomery was taken off the schedule and asked to stay home by Taylor Newsome (white female) allegedly because Montgomery had already worked 40 hours. Montgomery's response was that Montgomery was aware of other employees that are allowed to work more than 40 hours within a week and if she was taking Montgomery off to please email Montgomery an explanation because the practice was discriminatory. It is Montgomery's understanding that Newsome asked Shaniqua Cotton (black female in charge of staffing) to contact Montgomery and reiterate the policy.

20.     On September 5, 2021, Hoover arrived at Montgomery's home unannounced and without invitation. Montgomery felt uneasy and confused as to the nature of his visit, so Montgomery kept the gate closed and spoke through the gate. With hostility, he reaffirmed his authority over Montgomery by aggressively telling Montgomery that he was his direct report, and that Shaniqua Cotton needed to mind her own business. Hoover told Montgomery not to communicate with her anymore and everything about Montgomery needs to go through him only, even though Shaniqua Cotton has handled staffing issues for years. Montgomery was intimidated by Hoover's aggressive tone and body language, and Montgomery was unsure under what

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

circumstances a home visit like this would be appropriate or sanctioned by the hospital for staff members.

21.     On September 7, 2021, at 10:22 am, Montgomery received a text message from David Hanselman (CRNA manager, white male)("Hanselman") asking Montgomery to call him. When Montgomery responded and he and Hanselman had a telephone conversation. Hanselman informed Montgomery that Dr. Vanna had made multiple accusations against Montgomery. Montgomery engaged in in False Claims Act protected activity during that telephone call with Hanselmann. Montgomery reported that billing fraud by Dr. Vanna was occurring. Montgomery reported that Dr. Vanna attested that he was present for emergence (which is an insurance billing requirement), yet that is false, Dr. Vanna never appeared. The incident at issue happened at emergence when Dr. Vanna should have been present as he falsely documented that he was present. Hanselman ended the conversation by saying that he was having a meeting with the administration, including Wesley Lio (personal friend of Dr. Vanna).

22.     Dr. Vanna made false allegations against Montgomery sourcing from August 28, 2021. Dr. Vanna raised alarm and seemingly accused Montgomery of stealing medication and documentation fraud, both accusations are false. Adopted and spread those false allegations. Such allegations by Dr. Vanna made against Montgomery are racially motivated and retaliatory. Dr. Vanna has engaged in a pattern of racially discriminatory conduct during his employment with Prisma. Montgomery had also reported him in the past to his manager for administering a paralytic to an awake patient with an unsecured airway, jeopardizing the patient's safety.  Multiple coworkers reported him to the medical director as well to no avail.

23.     On September 10, 2021, Montgomery engaged in False Claims Act protected activity. Montgomery again reported to Prisma management that billing fraud by Dr. Vanna was

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

occurring. Montgomery reported that Dr. Vanna attested that he was present for emergence (which is an insurance billing requirement), yet that is false, Dr. Vanna never appeared. The incident at issue happened at emergence when Dr. Vanna should have been present as he falsely documented that he was present.

24.     On September 23, 2021, Montgomery was told to call into the office and have a telephone meeting with David Hanselman, Brad Hoover, and Aaron Toro.

25.     On September 27, 2021, a surgeon called Montgomery and informed Montgomery of racially offensive statements being made about Montgomery in the operating room by Dr. Vanna in the presence of the operating room staff. Dr. Vanna called Montgomery a slave and several statements were made stating and inferring that Montgomery is an incompetent CRNA. The surgeon was highly offended and wanted Montgomery to know about the racially offensive and defamatory things being said about Montgomery at the hospital.

26.     On September 28, 2021, Montgomery again called and informed Prisma about Montgomery's concerns, including billing fraud by Dr. Vanna. Montgomery reported that Dr. Vanna attested that he was present for emergence (which is an insurance billing requirement), yet that is false, Dr. Vanna never appeared. The incident happened at emergence when Dr. Vanna should have been present as he falsely documented that he was present. Thus, if anyone should have been terminated it was Dr. Vanna, not Montgomery. Yet, it is Montgomery's understanding that Dr. Vanna remains employed by Prisma and it did not report Dr. Vanna to the licensure board. Comparatively, Prisma terminated Montgomery and reported Montgomery to the Board of Nursing sourcing from Dr. Vanna's allegations.

27.     Montgomery's False Claims Act protected actions are connected to requirements of the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97–248 ("TEFRA"), which is a

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

statute that contains language that permits an anesthesiologist to be paid for medically directing anesthesia services.

28.    Per TEFRA, anesthesiologists are allowed to provide medical direction (to CRNAs, generally, or other qualified providers) for up to four concurrent cases. However, the federal Government will only pay for medical direction if the services meet all of the following conditions. The anesthesiologist must: (1) Perform a pre-anesthetic examination and evaluation of the patient; (2) Prescribe the anesthesia plan; (3) Personally participate in the most demanding aspects of the anesthesia plan, including induction and emergence, when applicable; (4) Ensure that any procedures in the anesthesia plan that are not performed by the physician are performed by a qualified individual; (5) Monitor the course of anesthesia administration at frequent intervals; (6) Remain physically present and available for immediate diagnosis and treatment of emergencies; and, (7) Provide indicated post-anesthesia care. 42 C.F.R. § 415.110(a). These rules are known as the "TEFRA" rules or "medical direction" rules.

29.    The anesthesiologist alone must document and attest in the patient's medical record that the seven TEFRA requirements listed above have been satisfied. Regulations further require the physician to document in the patient's medical record that all of these requirements have been satisfied and must specifically document the anesthesiologist having performed the pre-anesthetic exam and evaluation, having provided the post-anesthesia care, and having been present during the most demanding procedures, including induction and emergence where applicable. 42 C.F.R. § 415.110(b).

30.    "Medical direction" payments by the federal government, such as through the U.S. Department of Health and Human Services' ("HHS") Centers for Medicare and Medicaid Services ("CMS"), which administers the Medicare and Medicaid programs, and the U.S. Department of

Defense's Defense Health Agency ("DHA"), which administers the TRICARE program, are authorized when the medically directing anesthesiologist meets the seven TEFRA requirements listed above for anesthesia care furnished by a CRNA (or other qualified individual). 42 C.F.R. § 415.110(a).

31.     Medicare regulations permit a provider to bill for a service as "medically directed" only if the physician is directing the anesthesia services in no more than four concurrent cases. 42 C.F.R. § 415.110(a). Further, if the physician directs a student CRNA in any cases, the physician may direct no more than two cases concurrently. 42 C.F.R. § 414.46(d). The anesthesiologist cannot perform any other services while medically directing up to four concurrent cases. 42 C.F.R. § 415.110(a)(2).

32.     The personally performed rate is the highest and it entitles the physician to claim an unreduced physician fee. It applies where the anesthesiologist personally performs the anesthesia services alone, or monitors the work of a CRNA, or medical staff on a one-to-one basis. 42 C.F.R. § 414.46(c).

33.     The medically directed rate applies where the anesthesiologist is directing two, three, or four concurrent anesthesia cases being performed by a medical professional that the anesthesiologist is medically directing, and that rate is 50% of the physician fee schedule for each case (as opposed to 100% for one case). 42 C.F.R. § 414.46(d).

34.     The medically supervised rate applies where the anesthesiologist: (1) oversees more than four concurrent anesthesia procedures, or (2) performs other non-permitted services while directing four or fewer anesthesia procedures, or (3) does not meet all of the seven requirements for medical direction. 42 C.F.R. § 414.46(f); Medicare Claims Processing Manual, Chapter 12 – Physicians/Nonphysician Practitioners, § 50, Payment for Anesthesia Services.

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

35.     Pursuant to the South Carolina Medicaid Program's Physicians Provider Manual, "Anesthesia time involves the continuous, actual presence of the anesthesiologist or the medically directed CRNA/AA. It starts when the anesthesiologist begins to prepare the patient for anesthesia care in the operating room and ends when the anesthesiologist is no longer in continuous, actual attendance." South Carolina DHHS Physicians Services Provider Manual, Anesthesia Services, p. 125 (October 1, 2022).

36.     South Carolina Medicaid Program's Physicians Provider Manual further provides that "South Carolina Medicaid only accepts actual time when billing for anesthesia services. Report time in minutes in the units field (Item 24G) of the CMS-1500 claim form." Id. at p. 250.

37.     Upon information and belief, all Medicaid programs incorporate Medicare's anti-fraud and program integrity provisions within their respective programs.  For instance, the South Carolina Medicaid Program specifically states that it "operates under the anti-fraud provisions of 42 U.S.C. § 1320a-7b. This federal law relates to both fraud and abuse of the program and identifies illegal acts, penalties for violations, and the individuals and/or entities liable under this section." South Carolina DHHS Provider Administrative and Billing Manual, General Information and Administration, p. 39 (February 1, 2022).

38.     The Medicaid Program Integrity regulations define "fraud" as "an intentional deception or misrepresentation made by a person with the knowledge that the deception could result in some unauthorized benefit to himself or some other person. It includes any act that constitutes fraud under applicable Federal or State law." 42 C.F.R. § 455.2.

39.     At all times relevant herein, Prisma and its hospitals and physicians, were enrolled in the Medicare program, and sought and received payments from, and presented claims for payment to, the Medicare program.

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

40.     At all times relevant herein, Prisma and its hospitals and physicians, were enrolled in the State of South Carolina's Medicaid program, and sought and received payments from, and presented claims for payment to, the South Carolina Medicaid program.

41.     Montgomery's activities on and around September 7, 10, and 28, 2021, as described above, are protected activities under the False Claims Act.

**Termination:**

42.     Later, on September 28, 2021, Montgomery was terminated for pretextual reasons. Montgomery was accused of falsifying a medical record sourcing from services provided on August 28, 2021 related to the administration of the drug sugammadex to a patient.

43.     All four of the individuals involved in Montgomery's termination are white men (Dr. Matthew Vanna, David Hanselman, Brad Hoover, and Aaron Toro). At the time of Montgomery's termination, Montgomery believed he was the only black male employee out of a department of over 100 nurse anesthetist and anesthesiologist.

44.     All four of the individuals involved in Montgomery's termination were aware of Montgomery's False Claims Act protected activities.

45.     Montgomery had no discipline from Prisma prior to his termination.

46.     Montgomery was terminated without the corrective action plan afforded Montgomery's white coworkers outlined by the department manager and human resources.

47.     Montgomery was accused of falsifying the medical record, an act defined as the altering, changing or modifying a document for financial gain or deception. Montgomery spoke directly to the anesthesiologist about the medication Montgomery had given to the patient and the why and Montgomery completed the patient's medical record documentation within hours of the anesthetic, if not sooner. Unlike the antibiotic administration documentation or documentation for

11

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

being present at emergence, with false documentation benefiting Dr. Vanna and Prisma, there was no financial gain for the Plaintiff's documentation or any purported lack thereof. Yet, as the only black male, Montgomery was terminated for what is standard practice within the department.

48.     On September 28, 2021, Montgomery called Lori Smith in Human Resources, Montgomery was told she would call Montgomery back, yet Montgomery have never received a call back or email in response.

49.     The unlawful conduct by Prisma and its representatives toward Montgomery continues to the present. Prisma filed a complaint with the Board of Nursing against Montgomery's CRNA licensure based on the false accusations and statements of Dr. Vanna and Prisma management. This is the first complaint against Montgomery's licensure that he is aware of ever being filed at any time during his professional career.

50.     Because of Montgomery's race and retaliation for Montgomery's protected activities opposing race discrimination and violations of the False Claims Act, Montgomery was subjected to harassment (hostile work environment), disparate terms and conditions of employment, unlawful termination, and the submission of an untrue complaint to the licensure board in an effort to have Montgomery's professional CRNA licensure revoked.

## FIRST CAUSE OF ACTION
**(False Claims Act, 31 U.S.C. § 3730(h) - Retaliatory and Discriminatory Discharge)**

51.     Where not inconsistent herewith, the foregoing are realleged paragraphs.

52.     For about thirteen years prior to his termination on September 28, 2021, Montgomery was an employee, contractor, or agent of Prisma.

53.     During the course of his employment, contract or agency with Prisma, Montgomery obtained personal knowledge of what he believed to be fraudulent conduct of Prisma and specifically through the actions of Dr. Matthew Vanna.

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

54.     Montgomery reported one or more of the foregoing fraudulent activities to Prisma and expressed concern that one or more of Prisma's actions related to Dr. Vanna's medical record keeping constituted billing fraud. Such billing fraud could subject Prisma to suit and potential civil damages/penalties or criminal penalties for Medicare fraud and false claims pursuant to the False Claims Act.

55.     Prisma, and its officers and employees, had actual knowledge of Montgomery's False Claims Act protected activities, his whistleblower acts to warn of or stop Prisma from violating the False Claims Act by fraudulent billing Dr. Vanna's services.

56.     As a direct and proximate result of Montgomery's False Claims Act protected activities and his whistleblower acts to warn of or stop Prisma fraudulent billing related to Dr. Vanna's services, Montgomery was unlawfully terminated in retaliation of the False Claims Act.

57.     Prisma through its officers and employees wrongfully harassed, threatened, created a hostile work environment, and discriminated against Montgomery with respect to the terms and conditions of his employment in violation of the False Claims Act.

58.     As a direct and proximate result of Montgomery's False Claims Act protected activities of aforesaid lawful acts to warn of and stop one or more of Prisma's foregoing False Claims Act violations, including but not limited to the investigation of, and complaints to Prisma of, the foregoing fraudulent conduct and false claims related to Dr. Vanna, in furtherance of a False Claim Act action, Montgomery was unlawfully discharged from his employment in retaliation and discrimination against Montgomery for his protected activities, including whistleblower reports of, and complaints about, Dr. Vanna's fraudulent conduct and false claims, and Montgomery's efforts to stop one or more of the said fraudulent activities and false claims which he believed

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

violated the False Claims Act, said retaliatory discharge from employment and discrimination being in violation of 31 U.S.C. § 3730(h).

59.    As a direct and proximate result of Prisma's foregoing wrongful harassment, discrimination, hostile work environment and wrongful termination of Montgomery's employment in retaliation for the aforesaid whistleblowing False Claims Act protected activities with respect to the foregoing fraudulent conduct and false claims of Prisma, Montgomery has been injured, and is entitled to all relief necessary to make him whole, including, but not limited to, two (2) times the amount of back pay, interest on the back pay, lump sum commensurate with the increased tax impacts of the backpay award, and compensation for special damages sustained as a result of the retaliatory discharge, including litigation costs and reasonable attorneys' fees.

### SECOND CAUSE OF ACTION
### (Title VII - Race Discrimination)

60.    Where not inconsistent herewith, the foregoing are realleged paragraphs.

61.    Montgomery is a black male.

62.    Montgomery was subjected a hostile work environment because of his race.

63.    Montgomery was subjected to disparate terms and conditions of employment.

64.    Prisma gave preferential treatment to Dr. Vanna because of his race (white) and worse treatment toward Montgomery because of his race (black). Dr. Vanna has engaged in a pattern of performance deficiencies and egregious conduct warranting discipline and termination. Montgomery is aware of multiple complaints about Dr. Vanna's erratic and offensive behavior and concerns raised about his patient care, with little to no follow up from administration. Prisma has consistently given either none or the bare minimum in discipline to Dr. Vanna for his performance deficiencies and egregious conduct. Whereas, Montgomery is a black male, with no

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

record of discipline since Montgomery's employment began in June 2008, was terminated for false reasons on the mere accusation of Dr. Vanna.

65.     Montgomery was also subjected to disparate terms and conditions of employment related to Dr. Vanna's complaint and any purported investigation into that complaint sourcing from the events on August 28, 2021.

66.     Montgomery was subjected to a biased and targeted investigation.

67.     Montgomery was also subjected to disparate terms and conditions of employment related to Prisma not applying the progressive discipline policy to Montgomery when it has done so for white employees. For example, Prisma deviated from its Anesthesia Operating Room Pharmacy Controlled Substance Policy wherein there are several levels for corrective action prior to termination and notification to the Board of Nursing, none of those were utilized with Montgomery.

68.     Montgomery was also subjected to disparate terms and conditions of employment related to hours, scheduling, and compensation. For example, on multiple occasions Montgomery's hours and paychecks were inaccurate. It required multiple contacts by Montgomery to get paid for the work that Montgomery performed for Prisma.

69.     Prisma failed to engage in any progressive discipline of Montgomery because of his race.

70.     Prisma wrongfully terminated Montgomery because of his race.

71.     Montgomery's race, black, was the direct and proximate cause of the adverse employment actions taken by Prisma's agents and employees, acting within the course and scope of their duties, which violated the Civil Rights Act of 1964, for which Prisma is liable.

15

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

72.     Prisma is liable to Montgomery for the willful and wrongful race discrimination against Montgomery. Montgomery is entitled to an award of actual damages, including, but not limited to, back pay, front pay, loss of benefits, reduced retirement, and damages for reputational harm and emotional distress. Montgomery is also entitled to punitive damages for the willful and intentional acts of Prisma through its agents and employees, for pre and post judgment interest, an award for the increased tax consequences of a lump sum wage damages award, and attorney's fees and costs of this action.

### THIRD CAUSE OF ACTION
### (Title VII Retaliation)

73.     Where not inconsistent herewith, the foregoing are realleged paragraphs.

74.     Montgomery engaged in protected activities under Title VII when he complained about harassment and disparate treatment on the basis of race. Montgomery's opposition activities, as described above, are protected activities under Title VII. Montgomery was retaliated against for these protected activities.

75.     Prisma has continued to take adverse action toward Montgomery's employment after his protected activities. Prisma wrongfully terminated Montgomery because of his Title VII protected activities.

76.     These actions taken against Montgomery, which have resulted in damages, are the result of the planned and concerted effort to retaliate against Montgomery for his protected activities.

77.     Prisma is liable to Montgomery for the willful, wrongful, and bad faith retaliation against Montgomery for his protected activities. Montgomery is entitled to an award of actual damages, including, but not limited to, back pay, front pay, loss of benefits, reduced retirement, and damages for reputational harm and emotional distress. Montgomery is also entitled to punitive

16

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

damages for the willful and intentional acts of Prisma through its agents and employees, for pre and post judgment interest, an award for the increased tax consequences of a lump sum wage damages award, and attorney's fees and costs of this action.

**FOURTH CAUSE OF ACTION**
**(Defamation)**

78.    Where not inconsistent herewith, the foregoing are realleged paragraphs.

79.    Prisma, through the actions of its employees, defamed Montgomery in word and by act in falsely calling Montgomery a slave, falsely accusing Montgomery of stealing medication, falsely accused Montgomery of documentation fraud and/or falsification, falsely statements that Montgomery is an incompetent CRNA, and other false claims impugning Montgomery's personal character and professional capabilities.

80.    It is unequivocally clear that Prisma is the source of these false accusations about Montgomery because it ratified these false allegations through its representative's submission to the South Carolina Department of Labor, Licensing and Regulation. The publication element of Montgomery's defamation claim is not premised on any publications to the South Carolina Department of Labor, Licensing and Regulation; rather, it is separate evidence that the actionable publications were made in the operating rooms of Prisma's hospital and around the workplace on Prisma property source from representatives of Prisma.

81.    The defamatory statements attributable to Prisma about Plaintiff are known to source from Dr. Vanna, Hanselman, Hoover, and potentially others in management of Prisma.

82.    The false information described above was published by Prisma on August 28, 2021 through November 5, 2021. Additional publications unknown to Plaintiff may have continued after November 5, 2021.

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

83.    These false and pretextual statements were maliciously published by Prisma's agents and employees acting within the course and scope of their employment.

84.    The defamatory actions and words of Prisma have directly and indirectly promulgated to the public at large the false insinuation that Montgomery is unfit for his profession and committed potentially wrongful acts in the scope of performing his duties during employment with Prisma.

85.    Such actions and words are not subject to privilege on the part of Prisma as the co-workers and members of the public present in the operating rooms to whom the defamatory statements were published were not in a position of need-to-know regarding the false accusations against Montgomery.

86.    Such a portrayal of Montgomery is false, known to be false, made with malicious intent to harm Montgomery, in reckless disregard of the truth, and is defamatory per se; further, the above constitutes defamation by action as well as words and is actionable under the laws of the State of South Carolina.

87.    As a direct and proximate result of the aforesaid defamation, Montgomery's personal and professional reputation has been damaged, he has suffered physical and emotional distress, mental anguish, humiliation, and he has also suffered the loss of earnings.

88.    Montgomery is entitled to judgment against Prisma in an amount equal to the sum of his actual damages, including reputational harm, embarrassment, and suffering, and for attorney's fees and costs for bringing this action. Montgomery is also entitled pre-judgment interest and to an award of punitive damages to be determined by a jury for the malicious and intentional conduct of Prisma.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mandrill Montgomery prays for judgment against Defendant Prisma Health for all actual, compensatory, liquidated, reputational, and punitive damages as listed above in an amount to be determined by a jury, to the full extent allowed by law. Montgomery further prays for pre and post judgment interest, an award for the increased tax consequences of a lump sum wage damages award, attorney's fees, costs associated with this action, and any such other relief as the Court may deem just and proper.

**CROMER BABB PORTER & HICKS, LLC**

BY: s/Shannon Polvi
    Shannon Polvi (Bar #101837)
    1418 Laurel Street, Suite A (29201)
    Post Office Box 11675
    Columbia, South Carolina 29211
    Phone  803-799-9530
    Fax     803-799-9533
    *Attorney for Plaintiff*

December 21, 2022
Columbia, South Carolina

ELECTRONICALLY FILED - 2022 Dec 21 2:28 PM - GREENVILLE - COMMON PLEAS - CASE#2022CP2306806

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

IN THE COURT OF COMMON PLEAS

Case No.: 2022-CP-23-06806

Mandrill Montgomery,

Plaintiff,

vs.

Prisma Health,

Defendant.

**CERTIFICATE OF SERVICE**

This is to certify that the undersigned employee of Cromer Babb Porter & Hicks, LLC, did cause to have served on December 28, 2022, a copy of the Summons and Complaint, by First Class Mail, certified mail, return receipt requested, postage prepaid, to the following at the below indicated address:

*Certified Mail/Return Receipt Requested*
C T Corporation System
Registered Agent for Prisma Health
2 Office Park Court- Suite 103
Columbia, SC 29223

*Receipt #91 7199 9991 7037 2950 6425*

Elizabeth A. Malejko, Litigation Paralegal